IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DOUGLAS WAYNE DILL, SR., §
       Plaintiff, §
        §
        §
v. §     No. 3:23-CV-1399-G-BW
        § (consolidated with No. 3:23-CV-1660-G)
EXPERIAN INFORMATION § 
SOLUTIONS INC., et al., §
       Defendants. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendants Trans Union LLC's ("Trans Union") and

Experian Information Solutions, Inc.'s ("Experian") (collectively, "Defendants")

Joint Motion for Summary Judgment filed on January 13, 2026, seeking to dismiss

pro se Plaintiff Douglas Wayne Dill, Sr.'s complaint with prejudice pursuant to

Federal Rule of Civil Procedure 56.  (Dkt. No. 113 ("Motion").)   The Motion is

accompanied by a supporting brief (Dkt. No. 114 ("D. Br.")) and appendix (Dkt. No.

115 ("D. Appx.")).  Also before the Court are the following related motions filed by

Dill: (1) a motion to strike Defendants' summary judgment evidence (Dkt. No. 126);

two motions for sanctions that appear to be identical (Dkt. Nos. 119, 128); and a

motion to defer or deny Defendants' summary judgment motion (Dkt. No. 137).

United States Senior District Judge A. Joe Fish referred the case to the

undersigned magistrate judge for full case management pursuant to 28 U.S.C.

§ 636(b).  (Dkt. No. 87.)  Having considered the relevant pleadings, the evidence, and

the applicable law, the undersigned recommends that Plaintiff's motion to defer or

deny summary judgment under Rule 56(d) (Dkt. No. 137) be **DENIED** and

Defendants' Motion for Summary Judgment (Dkt. No. 113) be **GRANTED**, and the

remaining motions are resolved as set forth below.

### I. BACKGROUND

**A.    Procedural Background**

This Fair Credit Reporting Act case has been pending since March 2023, and

much of its procedural history has been detailed elsewhere in the record. (*See, e.g.*,

Dkt. Nos. 79, 110.)  Nevertheless, the undersigned notes the history particularly

relevant to the motions currently pending before the Court.

On July 8, 2024, the case was referred to United States Magistrate Judge

Renée Harris Toliver to conduct a settlement conference, and the case was stayed

while the parties attempted to negotiate a settlement.  (*See* Dkt. No. 44.)  It appeared

that the parties had reached an agreement to settle the case (*see* Dkt. Nos. 51, 52), but

they then litigated the existence of a settlement agreement (*see* Dkt. Nos. 56, 69, 70,

79, 86.)  After the Court denied Defendants' Motion to Enforce Settlement

Agreement (Dkt. No. 86), the Court ordered the parties to conduct a Joint Status

Conference (Dkt. No. 88), and on September 23, 2025, issued an amended

scheduling order (Dkt. No. 93), stating that all discovery must be completed by

November 17, 2025, and dispositive motions must be filed no later December 19,

2025.  Pursuant to the parties' joint motion (Dkt. No. 94), on October 10, 2025, the

Court extended the discovery deadline to December 4, 2025, and the dispositive

motions deadline to January 13, 2026.  (*See* Dkt. No. 97.)  No other deadlines were modified, and the parties were advised that "[they] should not expect extension of the briefing deadlines absent extraordinary and compelling circumstances."  (*Id.*)

In accordance with the Court's dispositive motion deadline, Defendants filed the present motion for summary judgment on January 13, 2026 (Dkt. No. 113), after which Dill filed an "emergency motion for continuance" on January 23, 2026 (Dkt. No. 117), and the Court granted Dill an extension to February 17, 2026 to file a response Defendants' motion for summary judgment  (Dkt. No. 120).  Thereafter, on February 6, 2026, Dill filed his response (Dkt. No. 123 ("Resp.")), and Defendants filed a reply on February 17, 2026 Dkt. No. 139 ("Reply")).  Accordingly, the Motion (Dkt. No. 113) is ripe for consideration.  Dill's First Amended Complaint (Dkt. 31. ("Compl.")) is the operative complaint in this action.

Dill's former counsel withdrew from the case on January 28, 2025, after which Dill began representing himself pro se.  (*See* Dkt. No. 66.)  During a court-ordered joint status conference in September 2025 (several months after the withdrawal of Dill's former counsel), Defendants determined that Dill did not have access to discovery responses that had been previously produced and agreed to provide copies of those materials to Dill.  (*See* Dkt. No. 140 at 3; Dkt. No. 141 at Appx. 86, 89-170.) Thereafter, Defendants sent Dill a follow-up email to confirm the completeness and accuracy of those previously produced responses.  (*See id.*)

Meanwhile, Dill filed a motion for sanctions on January 23, 2026, wherein he alleged "discovery discrepancies" on the part of Defendants.[1]  (Dkt. No. 119.) Defendants filed a response on January 28, 2026 (Dkt. No. 121), to which Dill did not file a reply, and the deadline to do so has passed.  *See* N.D. Tex. L. Civ. R. 7.1(f) ("[A] party who has filed an opposed motion may file a reply brief within 14 days from the date a response is filed.").  Accordingly, Dill's first motion for sanctions (Dkt. No. 119) is ripe for consideration.  Dill then filed a second motion for sanctions on February 6, 2026.  (Dkt. No. 128.)  As Defendants correctly assert in their response (*see* Dkt. No. 147 at 1), the two motions for sanctions are identical. Then, on February 12, 2026, Dill filed a Motion to Defer or Deny Defendants Motions for Summary Judgment (Dkt. No. 137), to which Defendants filed a response on February 26, and Dill did not file a reply within the time permitted to do so.

Defendants submit the following evidence in support of summary judgment:

- Exhibit A: Declaration of Marianne Litwa (D. Appx. 5-13) ("Litwa Decl."), supported by exhibits designated as "A-1" through "A-13" (D. Appx. 14-130).

- Exhibit B: Declaration of Samin Agha (D. Appx. 131-34) ("Agha Decl."), supported by exhibits designated as "B-1" through "B-10" (D. Appx. 135-278).

---

[1] Defendants' responses to Dill's motion to strike and motion for sanctions (Dkt. Nos. 121, 140) each include an independent appendix (Dkt. Nos. 122, 141) with pages numbered "Appx. 1," "Appx. 2," and so on.  These response appendix pages are cited using the docket number and appendix page number, *e.g.*, "Dkt. No. 122 at Appx. 1."

- Exhibit C: Declaration of Teresa Iwanski (D. Appx. 279-90) ("Iwanski Decl.") , supported by exhibits designated as "C-1" through "C-10" (D. Appx. 291-358).

(*See* Dkt. No. 115.)  Defendants' summary judgment evidence is cited to the corresponding "D. Appx." page number(s).

For his part, Dill has attached nearly two hundred pages of documents to his response in opposition—most of which appear to be documents produced by Defendants during discovery—but Dill fails to identify or cite to any of these documents in his response and neglects to explain how they support his opposition to summary judgment in favor of Defendants.[2]  (*See generally* Dkt. No. 123.)  Nor does Dill provide any legitimate reasons to explain why he does not have the evidence needed to prove his claims other than making vague accusations regarding Defendants' discovery deficiencies which the undersigned will discuss further below.

---

[2] The undersigned notes that Dill's submission of purported evidence fails to comply with N.D. Tex. L. Civ. R. 56.6(a)'s requirement that "[a] party who relies on materials in the record . . . to support or oppose a motion for summary judgment must include the materials in an appendix," which "must be assembled as a self-contained document, separate from the . . . response and brief" with each page numbered legibly in the lower, right corner.  *See* N.D. Tex. L. Civ. R. 56.6(b)(1), (3).  Although the undersigned does not strike Dill's response for failure to comply with local rules, *see Streat v. Hammond*, No. 3:07-CV-1882-P, 2009 WL 10678838, at *1 n.1 (N.D. Tex. Oct. 26, 2009), it points out the noncompliance to emphasize the importance of compliance with this requirement, as it "streamlines the resolution of motions by making it easier for the court to locate materials in appendices that are relied on by the parties." *State Farm Life Ins. Co. v. Bryant*, No. 3:18-CV-1628-L, 2019 WL 8938266, at *6 n.10 (N.D. Tex. May 16, 2019).  Additionally, by overlooking Dill's failure to comply with N.D. Tex. L. Civ. R. 56.5(c), the undersigned does not undertake a responsibility to comb through his supporting materials in search of evidence that might create a factual dispute. *See Chambers v. Sears, Roebuck & Co.*, 793 F. Supp. 2d 938, 946 (S.D. Tex. 2010) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (quoting *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)).

On February 6, 2026, Dill filed a motion to strike Defendants' summary judgment evidence (Dkt. No. 126), to which Defendants filed a response on February 15, 2026 (Dkt. No. 140).  For the reasons explained below, Dill's motion to strike summary judgment evidence is unnecessary and is denied on that basis.

**B.     Factual Background**

Defendants Experian and Trans Union are consumer reporting agencies ("CRAs") as defined under the FCRA. 15 U.S.C. § 1681a(f).  (*See* D. Br. at 2.) According to Defendants, they both "maintain written policies and procedures governing data intake, furnisher credentialing, quality control, and reinvestigation of consumer disputes," and "virtually every action undertaken by Experian and Trans Union is designed to assure that it maintains reasonable procedures to assure the maximum possible accuracy of the data in its files and on the credit reports it issues. (D. Br. at 2-3; D. Appx. 7 (Litwa Decl. ¶ 6); D. Appx. 284-88 (Iwanski Decl. ¶¶ 15-24).)  Defendants also maintain extensive procedures to ensure that they conduct reasonable reinvestigations into disputes submitted by consumers regarding the information on their credit reports.  (D. Br. at 2-3; D. Appx. 7-8 (Litwa Decl. ¶ 6); D. Appx. 285-88 (Iwanski Decl. ¶¶ 19-24).)  This includes use of the Automated Consumer Dispute Verification ("ACDV") system—which Defendants are required to implement under the FCRA.  (D. Br. at 2-3; D. Appx. 10-11 (Litwa Decl. ¶¶ 16-21); D. Appx. 286-87 (Iwanski Decl. ¶¶ 21-22).)  *See* 15 U.S.C. § 1681i(a)(5)(D).

Dill's claims arise solely out of information furnished to Defendants by Verizon Wireless Communications, Inc. ("Verizon") and Wells Fargo Bank, N.A. ("Wells Fargo").  (*See* Compl. 31 ¶¶ 3, 6–7; D. Appx. 140.)

### 1. Dill's Verizon Account

Dill signed up for a Verizon cell phone plan in August 2019, following a promotion by which he would receive a $150 prepaid Mastercard gift card for bringing a fully-paid device onto the network, along with a $10-per-month discount for using autopay.  (Compl. ¶ 8.)  Because Verizon would not apply the autopay discount if Dill paid for his plan by debit card, Dill cancelled his Verizon wireless service in October 2019.  (Compl. ¶¶ 9–10; D. Appx. 144.)  After Dill canceled his service, Verizon later assessed two $150 chargebacks against Dill based on its interpretation of the promotion's terms.  (Compl. ¶¶ 11, 25–26; D. Appx. 145.)  Dill, believing that he did not owe the chargebacks because he complied with the terms of the promotion, disputed these chargebacks with Verizon.  (Compl. ¶¶ 11–12, 25–26; D. Appx. 148.)  After Dill did not pay the chargebacks, Verizon sent the account to collections.  (Compl. ¶ 13.)

Based on information furnished by Verizon, Defendants reported the Verizon account with a $300 balance that had been sent to collections.  (D. Appx. 29, 315-16.)  Dill disputed the reporting of the Verizon accounts with Defendants multiple times between 2020 and 2022.  (Compl. ¶¶ 16–23; D. Appx. 12 (Litwa Decl. ¶ 25); D. Appx. 288 (Iwanski Decl. ¶ 27).)

On or about June 6, 2022, Verizon advised the Federal Communications Commission ("FCC") and Consumer Financial Protection Bureau ("CFPB") that one of the $150 charges had been assessed in error but continued to assert that the remaining balance was owed.  (Compl. ¶¶ 24–30; D. Appx. 151.)  After receiving updated information from Verizon, Defendants updated their reporting.  (D. Appx. 42, 336.)  Trans Union deleted the Verizon account in August 2022 after Plaintiff claimed the account was the product of fraud (D. Appx. 13 (Litwa Decl. ¶ 29); D. Appx. 63, 154-155), and Experian deleted the account in August 2022 at Verizon's request.  (D. Appx. 289 (Iwanski Decl. ¶ 31).)

### 2.  Dill's Wells Fargo Account

Dill opened a Wells Fargo Signature Visa account in approximately 2014.  (Compl. ¶ 42.)   Dill alleges that Wells Fargo contacted him in August 2021 to confirm that he made a thousand-dollar charitable donation using his credit card. (D. Appx. 158-59.)  After Dill advised Wells Fargo that he did not make the donation, Wells Fargo issued him a new card with a new account number ending in 5404.  (Compl. ¶ 57; D. Appx. 158.)  After receiving the new card, Dill began using it as he had with the previous card.  (D. Appx. 160.)  In May 2022, Dill reportedly discovered that Wells Fargo "improperly" began charging him a 22.15 percent interest rate when it issued his new card in August 2021.  (D. Appx. 161-62.)

Afterward, Dill began disputing the interest rate with Wells Fargo as a billing error.  (Compl. ¶ 45; D. Appx. 189.)  After he disputed the interest rate, Wells Fargo

reportedly sent Dill fraudulent, altered disclosures showing that his interest rate had always been 22.15 percent. (Compl. ¶¶ 46–50; D. Appx. 164-65.) Dill also alleges that Wells Fargo blocked his online access to his account statements and then sent him fraudulent, altered account statements. (Compl. ¶¶ 51–56; D. Appx. 177-78.)

In June 2022, Wells Fargo again changed Dill's account number and sent him a new card ending in 8600. (Compl. ¶ 57; D. Appx. 163.) Dill alleges he did not report his card as lost or stolen. (*Id.*) After Wells Fargo sent him the new card, Dill attempted to reject the terms and conditions accompanying the card—such as the interest rate—by sending the card back. (Compl. ¶ 58; D. Appx. 162.)

After sending the card back, Dill attempted to make a payment on his account by presenting a check to a local Wells Fargo branch. (Compl. ¶ 59; D. Appx. 168-69.) Dill told an employee at the Wells Fargo branch, however, that the payment was to be made only on the account ending in 5404 and wrote the same on the check. (*Id.*) Dill told the branch employee that, if the payment was applied to an account ending in 8600, "it was going to be fraud because that's not what I'm writing this check for." (D. Appx. 168-69.) Wells Fargo rejected the check because it only recognized the account ending in 8600. (Compl. ¶ 59; D. Appx. 169.) Consequently, no payment was ever made on the Wells Fargo account—which Dill admits. (D. Appx. 176, 183.) Wells Fargo eventually charged off the account. (Compl. ¶ 64.) Based on the information furnished to Defendants by Wells Fargo regarding Dill's account, Defendants reported the account as delinquent and

eventually charged off.  (*See* D. Br. at 5.)  Dill alleges that such reporting is inaccurate because he did attempt to make a payment and Wells Fargo refused to honor it.  (D. Appx. 170.)

So, it appears that the alleged inaccuracies reported on Dill's Wells Fargo account concern improper changes to his interest rate, reportedly fraudulent account statements and disclosures, the fraudulent issuance of a replacement card, and Wells Fargo's refusal to apply a payment Dill attempted to make under a previous account number.  (Compl. ¶¶ 43–64.)

### 3.  Dill's Disputes with Defendants and Defendants' Reinvestigations

Dill submitted multiple disputes to Defendants regarding the Verizon and Wells Fargo accounts.  (D. Appx. 12 (Litwa Decl. ¶ 25); D. Appx. 288-89 (Iwanski Decl. ¶¶ 27-28).)  Defendants processed Dills disputes through the ACDV system and forwarded the dispute information, including any documentation submitted by Dill, to the relevant furnishers.  (D. Appx. 12-13 (Litwa Decl. ¶¶ 25-26); D. Appx. 289 (Iwanski Decl. ¶ 29).)  Verizon and Wells Fargo verified the information Defendants were reporting about Dill's accounts, and Defendants reported the results of each reinvestigation to Dill.  (D. Appx. 13 (Litwa Decl. ¶¶ 27-28); D. Appx. 289 (Iwanski Decl. ¶¶ 29-30).)

## II.  LEGAL STANDARDS

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  A factual "issue is material if its resolution could affect the outcome of the action."  *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003).  "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to its opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case."  *Lynch Props., Inc. v. Potomac Ins. Co. of Illinois*, 140 F.3d 622, 625 (5th Cir. 1998).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial.  If the moving party fails

to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth"—and submit evidence of—"specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party—but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [his] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence

comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942–43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003), nor will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075. *Accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion

and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case

where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

"Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

Importantly, "the traditional leniency afforded to a pro se plaintiff does not excuse [plaintiff] from [the] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")). And, "[a]lthough courts should advise pro se [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293–94), the Fifth Circuit has "held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)); *see also Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("[T]here is a point at which even pro se litigants

must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention.  It is not unjustifiably onerous to require pro se parties to respond to proper motions for summary judgment.  All summary judgment nonmovants shoulder the same obligation.  District courts can make appropriate allowances for pro se responses that may be somewhat less-artfully written than those of represented parties.  This can be accomplished, however, without excusing them from the most basic requirement that they file a response.").

## III.  ANALYSIS

Dill brings four claims under the Fair Credit Reporting Act ("FCRA"): (1) negligent and willful violation of 15 U.S.C. §§ 1681i(a)(1)(A) for failure to conduct a reasonable reinvestigation of his dispute; (2) negligent and willful violation of 15 U.S.C. § 1681i(a)(1)(4) for failure to review and consider all relevant information; (3)  negligent and willful violation of 15 U.S.C. § 1681e(b) for failure to follow reasonable procedures in reporting information; and (4) failure to block information due to identify theft in violation of 15 U.S.C. § 1681c-2.  (Compl. ¶¶ 102-20.)   He also asserts a claim of improper reporting of a disputed debt in violation of 15 U.S.C. § 1666b (the "Fair Credit Billing Act" or "FCBA") and a state-law defamation claim.  (Compl. ¶¶ 121-37.)

## A.    Relevant Law: The Fair Credit Reporting Act

Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* "to require that consumer reporting agencies adopt reasonable procedures for

meeting the needs of commerce for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). "The Act defines a complex set of rights and obligations that attend the relationships among and between the provider of a credit report, the user of that information and the consumer who is made the subject of such a report." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998). "Generally, the FCRA provides a private right of action for willful or negligent noncompliance against [CRAs]." *Coleman v. Devos*, No. 3:19-CV-2417-D-BH, 2020 WL 9219408, at *3 (N.D. Tex. Dec. 28, 2020) (citing 15 U.S.C. §§ 1681n, 1681o). "The FCRA is to be liberally construed in favor of the consumer." *Wagner v. TRW, Inc.*, No. 97–30601, 1998 WL 127812, at *1 (5th Cir. Mar. 4, 1998) (unpublished).

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). To recover on a § 1681e(b) claim, a plaintiff must show that: (1) the CRA prepared a consumer report that contained inaccurate information; (2) the inaccuracy was due to the CRA's failure to follow reasonable procedures to assure the accuracy of its credit report; (3) the plaintiff was injured; and (4) the CRA's negligence proximately caused the plaintiff's

injury.  *See Grant v. RentGrow, Inc.*, No. SA-21-CV-1172-JKP, 2023 WL 5813140, at *5 (W.D. Tex. Sept. 6, 2023).

Section 1681i(a) provides that, if a consumer disputes the completeness or accuracy of any item in her file, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file."  15 U.S.C. § 1681i(a)(1)(A).  To assert a claim under Section 1681i(a), a plaintiff must establish that: (1) Plaintiff disputed the accuracy of an in item in his credit file and notified the CRA directly of the dispute; (2) the CRA did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the statutory period; (3) the CRA's noncompliance was negligent or willful; (4) Plaintiff suffered injury; and (5) Plaintiff's injury was caused by the CRA's failure to reinvestigate and record the current status of the disputed information or delete the item from the file.  *See Davidson v. Equifax Info. Servs. LLC*, No. 4:24-CV-1172-P, 2025 WL 2632407, at *4 (N.D. Tex. Aug. 14, 2025) (citing *Beard v. Experian Info. Sols., Inc.*, No. CV 23-1306, 2023 WL 8827762, at *3 (E.D. La. Dec. 21, 2023); *Beard v. Equifax*, No. CV 23-1592, 2023 WL 10554729, at *3 (E.D. La. Dec. 20, 2023)), *adopted sub nom.*, *Davidson v. Texan Credit Corp.*, 2025 WL 2490854 (N.D. Tex. Aug. 29, 2025).

The threshold question under both § 1681e(b) and § 1681i is whether the plaintiff's consumer reports contained inaccurate information.  *See Reyes v. Equifax*

*Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025) ("We join the other circuits in concluding that inaccuracy is a threshold requirement for § 1681i claims."); *see also Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) (explaining that "[i]n order to pursue a cause of action based upon willful or negligent violation of 15 U.S.C. § 1681e(b), the report sought to be attacked must be inaccurate"); *Warner v. Equifax Info. Servs. LLC*, No. 3:23-CV-1286-E, 2025 WL 714243, at *3 (N.D. Tex. Feb. 11, 2025) ("To prevail on a claim under either Section 1681e(b) or Section 1681i, [a plaintiff] must prove that his consumer reports included inaccurate information." (internal quotation marks and citations omitted) (alterations in original)). *Palomo v. Trans Union, LLC*, No. 4:21-CV-904-SDJ-KPJ, 2022 WL 17731824, at *3 (E.D. Tex. Sept. 7, 2022) ("To state a claim under Section 1681e(b) or Section 1681i, the plaintiff must plead factual allegations showing that inaccurate information was included in the plaintiff's credit report.").

"A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Sepulvado*, 158 F.3d at 895. "But the [FCRA] does not impose strict liability for inaccurate entries." *Id.* "Rather, the plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Id.* at 896. "Mere imprecision does not render information inaccurate." *Toliver v. Experian Info. Sols., Inc.*, 973 F. Supp. 2d 707, 715 (S.D. Tex. 2013). "However, information

that is 'open to an interpretation that is directly contradictory to the true information' is sufficiently misleading to qualify as inaccurate." *Id.* (quoting *Wagner v. TRW, Inc.*, No. 97-30601, 1998 WL 127812, at *1 (5th Cir. Mar. 4, 1998) (unpublished)).

Further, the Fifth Circuit has recently joined other circuits in holding "that consumer reporting agencies are not required to investigate the legal validity of disputed debts under the FCRA." *Reyes*, 140 F.4th at 289. "A consumer may not use § 1681i's reinvestigation procedures to collaterally attack the validity of a reported debt" because "credit reporting agencies are not tribunals and 'are neither qualified nor obligated to resolve legal issues.'" *Id.* at 287 (citing *Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020)). Further, a debt was not inaccurate for purposes of a § 1681i claim where a consumer's alleged inaccuracy was "based on a not-yet-adjudicated position that the debt is not legally valid." *Id.* (cleaned up).

Thus, Dill has the burden of proving the inaccuracy of the information on his credit report—failure to do so would be fatal to his claims. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 n.9 (11th Cir. 1991) (noting that "the burden of proving that a particular report is inaccurate is part of the plaintiff's case"); *Watkins v. Experian Info., Sols., Inc.*, No. 6:13-CV-00239-WSS-JCM, 2014 WL 12879669, at *6 (W.D. Tex. Sept. 8, 2014) (granting summary judgment where plaintiff failed to produce evidence that the challenged credit report contained inaccurate information), *adopted*, 2014 WL 12879668 (W.D. Tex. Oct. 3, 2014); *Norman v. Experian Info. Sols., Inc.*, No. 3:12-CV-128-B, 2013 WL 1774625, at *4 (N.D. Tex.

Apr. 25, 2013) ("To succeed under either Section 1681e(b) or Section 1681i, [Plaintiff] 'must prove that his consumer reports included inaccurate information.'") (citations omitted).  Importantly, the alleged inaccuracy under §§ 1681e(b) and 1681i must be one that is "objectively and readily verifiable."  *Reyes*, 140 F.4th at 288; *Rozov v. Bank of Am., N.A.*, No. 24-13034, 2025 WL 1620921, at *2 (11th Cir. June 9, 2025); *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251–52 (4th Cir. 2025); *Holden v. Holiday Inn Club Vacations Inc.*, 98 F.4th 1359, 1368 (11th Cir. 2024); *Sessa v. Trans Union, LLC*, 74 F.4th 38, 40 (2d Cir. 2023); *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023).

"Inaccuracy or incompleteness under the FCRA is not synonymous with legally recoverable or legally valid.  For instance, a dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable."  *Roberts*, 131 F.4th at 251. Numerous courts have determined that CRAs are neither qualified nor required to reinvestigate consumer disputes that are not objectively and readily verifiable.  *See Rozov*, 2025 WL 1620921, at *3 (holding that fraud allegations are not objectively and readily verifiable); *Mader*, 56 F.4th at 269 (affirming summary judgment where the inaccuracy the plaintiff pointed to on his consumer report "evades objective verification").

**B.     Dill's Evidentiary Objections**

On February 6, 2026, along with his response to Defendants' motion for summary judgment (Dkt. No. 123), Dill filed a motion to strike Defendants' summary judgment evidence (Dkt. No. 126), as well as several other motions and "notices" variously accusing Defendants of failing to comply with their discovery obligations (*see* Dkt. Nos. 124, 125, 126, 127, 128, 129, 130, and 131).  Among these filings are two identical motions for sanctions.  (*Compare* Dkt. No. 119, *with* Dkt. No. 128.)  Dill also filed a motion to defer or deny summary judgment pursuant to Rule 56(d).  (Dkt. No. 137.)  Dill's motions and the objections asserted therein all arise from alleged discovery deficiencies.  (*See generally* Dkt. No. 119, 126, 128, 137.)  The undersigned addresses each motion in turn.

**1.  Dill's Motion for Discovery Sanctions**

As noted above, Because Dill filed two identical motions for sanctions (*compare* Dkt. No. 119 *with* Dkt. No. 128) seeking to impose sanctions against Defendants for alleged deficiencies in the production of requested or required documents.  Because Dill's first motion for sanctions (Dkt. No. 119) is ripe for consideration, his second, identical motion for sanctions (Dkt. No. 128) is **DENIED AS MOOT**.

As an initial matter, Dill's first motion for sanctions, captioned "Plaintiff's Motion for Sanctions under Rule 37, for Adverse Inference, and for Exclusion of Evidence," is procedurally defective.  First, the motion did not demonstrate a

meaningful attempt to confer as required by N.D. Tex. L. Civ. R. 7.1. (*See* Dkt. No. 119; *see also* 121 at 8-9, Dkt. No. 122 at Appx. 71, 74.)  The conference requirement is not a mere formality.  It "is in place to require the parties to communicate and coordinate in good faith to attempt to resolve any nondispositive dispute without court intervention."  *Brown v. Bridges*, No. 3:12-CV-4947-P, 2014 WL 2777373, at *2 (N.D. Tex. June 19, 2014).  It "is part and parcel of the ethical rules governing attorneys and the court rules governing all parties, including *pro se* parties, that require all parties to engage in meaningful discussions in an attempt to resolve matters without court intervention."  *Id.* (citing *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284, 289-90 (N.D. Tex. 1988)); *Cardenas v. Fiesta Mart, LLC*, No. 3:22-CV-2607-K-BN, 2024 WL 967849, at *2 (N.D. Tex. Mar. 5, 2024) (noting that the conference requirement "'cannot be ignored or flouted by any counsel or pro se party.")

Second, the motion was not timely filed.  Discovery closed on December 4, 2025.  (*See* Dkt. No. 97.)  If Dill disagreed with Defendants' discovery responses or objections, or otherwise believed that Defendants withheld documents, his concerns should have been raised during the discovery period—not over a month after it ended.  And although Dill contends that "[a]fter the close of discovery and dispositive-motion deadlines, Experian produced additional materials bearing directly on reinsertion compliance—without seeking leave of Court" (*see* Dkt. No. 119 ¶ 4), his contention is not supported by the record.  Defendants provide evidence

indicating that Experian responded to Plaintiff's Requests for Production in 2024 (Dkt. No. 122 at Appx. 5–34) and supplemented its production with a single four-page document on December 4, 2025—the day of the discovery deadline (*id*. at Appx. 64, 66–69 ).[3]  Accordingly, Defendants contend that Experian's supplemental document production was entirely consistent with its obligations under Rule 26.  (*See* Dkt. No. 121 at 4.)  As Dill did not file a reply, he fails to rebut Defendants' evidence demonstrating their compliance with the discovery deadlines.

Turning to the merits, Dill's motion for sanctions (Dkt. No. 119) does not support a finding that Defendants withheld any requested, relevant documents.  Dill does not identify any specific discovery requests or responses that Defendants failed to produce, nor does he point to any specific deficiencies in Defendants' discovery responses.  (*See generally* Dkt. No. 119.)  Although Dill claims that Defendants "failed to produce the precise records required by 15 U.S.C.  § 168li(a)(5)(B)," (*see id*. at ECF p. 4-5), the "required records" to which Dill refers relate to a different provision of the FCRA—one that is not pled in his live complaint.  (*See generally* Compl.)  Dill brings claims only under 15 U.S.C. §§ 1681i(a)(1)(A), 1681i(a)(1)(4), 1681e(b), and 1681c-2 (as well as two claims outside the FCRA), and therefore, he is

---

[3] According to Defendants, Experian noticed that a single CDF was inadvertently not included in Experian's initial document production, and it produced it on December 4, 2025.  (*See* Dkt. No. 140; Dkt. No. 142 at Appx. 172.)  Defendants represent that the CDF produced on December 4 was not materially different than any of the several CDFs previously produced in 2024, and furthermore, the document was not relied upon by Defendants in the present motion for summary judgment.  (*See* Dkt. No. 140 at 4.)

not permitted to assert new claims at this stage of the litigation—as a summary judgment motion is pending (*see* Dkt. No. 119); the deadline for dispositive motions has long expired (*see* Dkt. No. 97); and the Court has denied Dill's motion for leave to file an amended complaint (*see* Dkt. No. 112). *See, e.g., Med-Cert Home Care, LLC v. Becerra*, No. 3:18-CV-02372-E, 2023 WL 6202050, at *10 (N.D. Tex. Sept. 21, 2023) ("A claim which is not raised in the complaint but, rather, is raised only in opposition to a motion for summary judgment is not properly before the court.'" (citing *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)); *see also Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789–90 (5th Cir. 2021) ("Our precedent precludes a plaintiff from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment." (cleaned up)); *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (district court did not abuse its discretion in declining to consider "new factual allegations and theories of liability not present in the pleadings").

Furthermore, discovery under Rule 26 is limited to matters relevant to the claims and defenses actually asserted. *See Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves."); *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.*, No. CV 11-2405, 2017 WL 2271982, at *4 (E.D. La. May 24, 2017) ("Federal Rule of Civil Procedure 26(b)(1) makes clear that any discovery must be relevant to a party's claim or

defense.  Moreover, [t]he Committee Comments to [Rule 26] confirm that requiring

relevance to a claim or defense signals to the court that it has the authority to confine

discovery to the claims and defenses asserted in the pleadings, and signals to the

parties that they have no entitlement to discovery to develop new claims or defenses

that are not already identified in the pleadings." (internal quotation marks and

citation omitted)).  Here, Dill chose not to plead a claim under 15 U.S.C. §

1681i(a)(5)(B).  Therefore, Dill cannot invoke Rule 37 sanctions based on alleged

discovery deficiencies related to a statutory provision that is not part of the operative

pleadings.

Although Dill asks the Court to impose sanctions against Defendants under

Rule 37, he has not shown that Defendants have ignored any discovery-related court

order issued in this case.  Thus, Dill's motion for sanctions is, in substance, an

improper attempt to compel additional discovery after the close of discovery by

styling his request as a sanctions motion.  But Rule 37 does not permit a party to

sidestep discovery deadlines by reframing untimely discovery complaints as requests

for sanctions or adverse inferences, and where, as here, Dill never moved to compel

during the discovery period and no discovery order was violated, Rule 37 cannot be

used as a post-deadline enforcement mechanism.  *See* Fed. R. Civ. P. 37(b)(2)(A)

(stating that a party may seek sanctions if another party "fails to obey an order to

provide or permit discovery"); *see also United Healthcare Servs., Inc. v. Rossel*, No. 3:21-

CV-1547-L-BT, 2024 WL 1252365, at *2 (N.D. Tex. Mar. 21, 2024) (finding that

"imposition of sanctions under Rule 37(b) requires the prior violation of a court order"); *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019), *as revised* (June 6, 2019) ("Rule 37(b)(2)(A) allows a district court to impose a sanction when a party fails to comply with a discovery order[.]").  There has been no such order entered in this case.  For all these reasons, Dill's first motion for sanctions (Dkt. No. 119) is **DENIED**, and any evidentiary objections asserted therein are **OVERRULED**.

### 2.  Dill's Motion to Strike Defendants' Summary Judgment Evidence

The evidentiary objections raised in Dill's motion to strike Defendants' summary judgment evidence (Dkt. No. 126) are meritless for similar reasons.  Because the proper procedure for contesting summary judgment evidence is to assert an objection to proffered evidence, not to move to strike the evidence, Dill's motion to strike (Dkt. No. 126) is unnecessary.  *See Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) ("Under the now-applicable Rule 56(c)(2) . . . it is no longer necessary for a party to file [a motion to strike]; instead, the party may simply object to the material.").  Accordingly, the motion to strike (Dkt. No. 126) is **DENIED**, and the contested evidence is addressed below.

Dill claims that the documents listed in his "Supplemental Exhibit Index Identifying Defendants' Summary-Judgment Evidence Subject to Exclusion Under Rule 37(c)(1) lists evidence "subject to mandatory exclusion."  (Dkt. No. 127 at ECF p. 3.)  For the most part, the objected-to evidence is based on the same unsupported

discovery "deficiencies" asserted in Dill's motion for sanctions. (*See* Dkt. No. 119.) But, as previously explained, Dill did not raise any issues with Defendants' discovery responses or objections during or shortly after the discovery period.

In addition, some of Dill's evidentiary objections appear to be based on incorrect information. For example, Dill takes issue with Defendants' Exhibit A-12 because it "first surfaced only at or near close of discovery; no timely production identifying this as reinvestigation result." But the referred-to exhibit is Dill's Trans Union Disclosure dated September 14, 2022, **not** his September 14, 2022 Experian CDF—which is the only document produced at or near the close of discovery in this case. (*See* Dkt. No. 142 at Appx. 172.) In any event, as previously explained, Defendants do not rely on the September 14, 2022 CDF in the summary judgment motion.

Dill also asserts that Defendants' Exhibit A-7 (D. Appx. 54-61, Plaintiff's August 8, 2022 Trans Union Internal Disclosure) must be excluded because it is "[n]ot identified in Rule 26 initial disclosures as internal compliance evidence." (Dkt. No. 127 at ECF p. 3.) Defendants, however, provide evidence to the contrary. Exhibit A-7 is marked with Bates labels TU 1060–1066 (*see* D. Appx. 54-61), and Trans Union's First Supplemental Initial Disclosures clearly note that it will use documents marked TU 1–1537 to support its defenses (*see* Dkt. No. 141 at Appx. 21).

Dill also objects to various Trans Union disclosures (D. Appx. 26-51) and his June 8, 2022 "FTC Identity Theft Report" (D. Appx. 52-53), purportedly because

they are being "used to imply compliance without producing reinsertion certification or notice." (Dkt. No. 127 at ECF p. 3.)  But, as discussed above, Dill does not assert a "reinsertion" claim under § 1681i(a)(5)(B) against either Defendant, and because the duties outlined in § 1681i(a)(5)(B) are distinct from §§ 1681i(a)(1)(A) and 1681e(b)) (the claims asserted herein), "reinsertion certifications" have no relevance in these summary judgment proceedings.

Finally, Dill claims that certain exhibits should be excluded because the ACDV/e-OSCAR logs or other "underlying call logs, recordings, or 'verification workflow'" were not produced.  (*See id*. (refering to D. Appx. 62-63, 64-78, 173-217).)  Defendants, however, provide evidence that they produced all ACDVs for Dill's disputes.  (*See* Dkt. No. 140 at 6; Dkt. No. 141 at Appx. 173–217.)  In addition, the record does not establish that Dill ever requested "calls logs" or "recordings" or any metadata associated with the ACDVs at issue in this case.  (*See* Dkt. No. 140 at 5-6; Dkt. No. 141 at Appx. 24–84.)

For all the foregoing reasons, the objections raised in Dill's motion to strike Defendants' summary judgment evidence (Dkt. No. 126) are **OVERRULED**.

### 3. Dill's Motion to Defer or Deny Defendants Motion for Summary Judgment

On February 12, 2026, Dill filed "Plaintiff's Rule 56(d) Motion to Defer or Deny Defendants Motions [sic] for Summary Judgment (Dkt. No. 137), allegedly because Defendants "with[eld] internal policies and procedures." (*Id*. at 1.) According to Dill, "summary judgment must be denied or deferred until these

discrete, central materials are produced under certain protections reviewed in camera." (*Id*.)  As an initial matter, Dill's motion is defective because he did not confer with Defendants about the Motion, or the relief sought in the Motion as required by Local Rule 7.1(a).  Indeed, the Motion does not contain the Certificate of Conference required by Local Rule 7.1(a).  Nevertheless, the undersigned with consider Dill's Rule 56(d)motion on the merits.

Rule 56(d) allows a party to request that a court defer consideration of a summary judgment motion if the party "cannot present facts essential to justify its opposition" to the motion.  Fed. R. Civ. P. 56(d).  Rule 56(d) "may not be invoked by the mere assertion that discovery is incomplete." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir. 1990) (internal citations omitted); *see also Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) ("[N]on-moving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts.'").  Instead, a party "must 'show (1) why [he] needs additional discovery and (2) how that discovery will create a genuine issue of material fact.'" *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001).)  A party seeking relief under Rule 56(d) must also demonstrate why their "diligent efforts to obtain evidence from the moving party have been unsuccessful." *Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022) (emphasis added) (internal

citation omitted); *January*, 74 F.4th at 651 (nonmovant "must also have diligently pursued discovery" to prevail on a Rule 56(d) motion).

Dill has failed to satisfy Rule 56(d)'s diligence requirement. The record reflects that in October 2023, the "parties agree[d] that there may be a need for discovery in this case to be governed by a protective order," and informed the Court that "[i]f the parties agree concerning the need for, scope and form of such a protective order, counsel will confer and then submit a jointly proposed protective order to the Court." (Dkt. No. 21.) Thereafter, Dill sought internal policy materials relating to Defendants' dispute-handling procedures. (*See* Dkt. No. 141 at Appx. 31, 60-61.) The record further reflects that Defendants agreed to produce those materials following the entry of an agreed-upon protective order (*see id*. at Appx. 31, 62-63), but neither Dill nor his prior counsel secured or sought such a protective order, never conferred with Defendants regarding a protective order nor requested a draft of a protective order, and never otherwise sought relief from the Court, such as through a motion to compel.

Discovery in this case remained open for nearly year, until December 4, 2025. (*See* Dkt. No. 97.) Yet, Dill never renewed his request for Defendants' internal procedures or suggested that the parties submit an agreed-upon protective order to the Court. Nor did Dill move to modify the discovery deadline for this reason. He did not seek relief until after Defendants filed their motion for summary judgment. (Dkt. No. 113.) Indeed, the record indicates that after Dill began representing

himself, Defendants signaled their willingness to work with Dill by providing him copies of the documents they had previously produced to his former counsel. (*See* Dkt. No. 140 at 3–4; Dkt. No. 141 at Appx. 86, 89-170.)  Nothing in Dill's Rule 56(d) motion explains why he failed to exercise diligence in seeking the entry of a protective order to pursue discovery of these "central" internal policies and procedures.  *See* Fed. R. Civ. P. 56(d).   Thus, Dill cannot remedy his lack of diligence in seeking discovery or the entry of a protective order by seeking relief under Rule 56(d).

In addition to his lack of diligence during discovery, Dill has failed to show why he needs the discovery he seeks or how it will create a genuine issue of fact precluding summary judgment.  To prevail on a Rule 56(d) motion, a non-movant must "show (1) why [he] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *January*, 74 F.4th at 651.  Here, Dill's only argument as to why he needs Defendants' policies is because, he contends, Defendants have "the burden to prove they maintained reasonable procedures and complied with their statutory obligations under the Fair Credit Reporting Act." (Dkt. No. 137 at 4.)  This is incorrect.  It is Dill's burden to point to evidence establishing that Defendants violated the FCRA—and more specifically, to prove that Defendants maintain unreasonable procedures that caused him damages. *See* *Sepulvado*, 158 F.3d at 896 ("[T]he plaintiff must show that the inaccuracy resulted

-32-

from a negligent or willful failure to use reasonable procedures when the report was prepared.").

More importantly, however, Dill has failed to address how these internal policies and procedures are relevant to the Court's consideration of the present summary judgment motion—which primarily argues that Defendants are entitled to summary judgment because Dill has failed to identify an objectively verifiable inaccuracy on his consumer report that can give rise to his claims under the FCRA. (*See* Dkt. No. 144 at 2.)

Finally, to the extent Dill seeks Defendants' internal "reinsertion" procedures (*see* Dkt. No. 137 at 3), as previously explained, Dill did not plead a claim for improper reinsertion under 15 U.S.C. § 1681i(a)(5) (*see generally* Compl.), nor does Defendants' motion for summary judgment assert or rely on any reinsertion argument (*see generally* Dkt. 114).  For all these reasons, the motion to deny or defer Defendants' motion for summary judgment (Dkt. No. 137) should be denied.

**C.    Defendants are entitled to summary judgment of Dill's FCRA claims as a matter of law.**

**1. Dill's FCRA claim fails because the alleged inaccuracy in the reporting of his Verizon account presents a legal dispute.**

It is Dill's burden to prove that Defendants reported a factual inaccuracy.  *See Cahlin*, 936 F.2d at 1156 n.9; *Watkins*, 2014 WL 12879669, at *5; *Norman*, 2013 WL 1774625, at *4.  Dill's §§ 1681i and 1681e(b) claims related to his Verizon account

focus on the validity of a $300 charge, and subsequent debt, reported to Trans Union and Experian.  (D. Appx. 142-43.)  Dill failed to meet this burden.

Dill disputes that he owes the balance on the account because he performed his obligations under his agreement with Verizon by paying his account on time and keeping his account open for the time frame specified by the promotion.  (D. Appx. 148, 145-46.)  Verizon alleges, however, that Dill did not perform his obligations under the agreement because he did not keep his account open for the time frame required by the promotion, and he was therefore charged in response to his failure to perform.  (D. Appx. 292.)  Thus, Dill challenges the validity of the debt.

The validity of a debt is a legal question that can only be resolved by a court of law, and CRAs are "neither qualified nor obligated to resolve [such legal issues] under the FCRA."  *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008). Federal courts have concluded that CRAs are not required to adjudicate the validity of a disputed debt.  *See, e.g.*, *Reed v. Innovis Data Sols., Inc.*, No. 3:20-CV-2448-X, 2021 WL 3290370, at *2 (N.D. Tex. Aug. 2, 2021) ("[T]he [FCRA] does not hold [CRAs] to promises made between creditors and debtors."); *see also Estrada v. Experian Info. Sols., Inc.*, 670 F. Supp. 3d 412, 423 (W.D. Tex. 2023) ("The court now joins the overwhelming majority of other federal courts in finding that CRAs are not required" to "investigate the legal validity of disputed debts").

Here, the alleged inaccuracy Defendants reported on the Verizon account arises from the validity of the $300 Verizon charged to Dill's account after he

terminated his service contract.  (D. Appx. 147.)  But Dill does not explain how the reported information was factually incorrect or misleading.  He merely states that he expected Defendants to resolve what is, at its core, a contract dispute between Dill and Verizon.  (D. Appx. 147, 149-150.)   It is not, however, Defendants' responsibility to resolve the underlying dispute concerning whether Dill performed under his contract with Verizon.  "[C]redit reporting agencies are not tribunals and are neither qualified nor obligated to resolve legal issues."  *Reyes*, 140 F.4th at 287 (citations and quotation marks omitted); *Estrada*, 670 F. Supp. 3d at 412 ("Instead, determining legal duties under a contract is a task for a court." (citations and quotation marks omitted)).

Dill has not provided competent summary judgment evidence sufficient to establish that, viewed in his favor, his claims amount to something more than a collateral attack against Verizon, nor is there evidence from which a fact finder can find that the reported information was inaccurate.  Therefore, Dill's §§ 1681i and 1681e(b) claims as to his Verizon account fail as a matter of law.  *Reyes*, 140 F.4th 279 (granting summary judgment on plaintiff's §§ 1681i and 1681e(b) claims because a plaintiff "may not use the [FCRA] to collaterally attack the validity of a debt' by challenging a CRA's procedures"); *Ray v. Experian Info. Sols. Inc.*, No. 3:24-CV-01129-X, 2025 WL 1994400, at *2 (N.D. Tex. July 17, 2025) (dismissing FCRA claims because plaintiff "cannot demonstrate that his claims amount to more than

collateral attacks" against the relevant creditor).  Accordingly, Defendants are entitled to summary judgment on this claim.

### 2. Dill's identity theft claims related to his Wells Fargo account likewise present a legal dispute.

Dill's §§ 1681i and 1681e(b) claims related to his Wells Fargo account involve claims of alleged identity theft or fraud against Wells Fargo.  (*See* Compl. ¶ 59.) Specifically, Dill alleges that, after he disputed increased interest rates with Wells Fargo, the company fraudulently issued him a new card.  (D. Appx. 162.)  He also alleges that when he began disputing his interest rates, Wells Fargo began altering his previous account statements and account term summaries.  (D. Appx. 177-78.)  Dill alleges that he rescinded the new card by sending it back to Wells Fargo (D. Appx. 162), and when he attempted to make a payment by submitting a check to a local Wells Fargo branch using the previous account number, the local branch refused to accept the check (D. Appx. 168-69).  According to Dill, Defendants should not have reported the account as delinquent (and eventually charged off) because Dill attempted to make a payment on the account.  (D. Appx. 170-71.)  Dill further asserts that the Wells Fargo "inaccuracy" on his credit report is based on Wells Fargo's alleged acts of identity theft and fraud.  (D. Appx. 166-67, 179-80.)

As explained above, however, the alleged inaccuracy under §§ 1681e(b) and 1681i must be one that is "objectively and readily verifiable."  *Reyes*, 140 F.4th at 288.  And "[i]naccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of

the parties' actions—such as claims of fraud or retaliation," *id.* (citing *Roberts*, 131 F.4th at 251). "At a minimum, [Plaintiff's] challenge to [his] underlying debt, i.e., that it was the result of fraud, involves the application of law to alleged fact(s). And this is precisely the type of analysis that courts have understood that CRAs are not equipped to perform." *Reyes v. Equifax Info. Servs., LLC*, No. 4:21-CV-639-SDJ, 2024 WL 1308000, at *2 n.3 (E.D. Tex. Mar. 27, 2024), *aff'd*, *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279 (5th Cir. 2025); *see also Rozov*, 2025 WL 1620921, at *3 ("We do not see how [Defendant], a consumer reporting agency, could objectively and readily verify whether [Plaintiff] intended to defraud Bank of America when he deposited a fraudulent check.").

Dill's allegations of "fraud" related to his Wells Fargo account is an example of the type of "complex fact-gathering and in-depth legal analysis" that makes a dispute not "objectively and readily verifiable," and which Defendants are simply "ill-equipped" to do as "non-tribunal third parties." *Roberts*, 131 F.4th at 251. Because Dill's FCRA claims regarding his Wells Fargo account do not present a factual inaccuracy that Defendants are qualified and obligated to resolve, summary judgment is appropriate on this claim. *See Reyes*, 2024 WL 1308000, at *3 (granting summary judgment on plaintiff's §§ 1681i and 1681e(b) claims centered around allegations of identity theft).

Dill's § 1681e(b) claim similarly should be dismissed. For Dill's that claim ("reasonable procedures") to survive summary judgment, he must prove that:

(1) inaccurate information was included in his consumer report, (2) the inaccuracy was due to Defendants' failure to follow reasonable procedures to assure the maximum possible accuracy of the consumer report, (3) Plaintiff suffered a cognizable injury, and (4) Plaintiff's injury was caused by defendant's inclusion of the inaccurate entry.  *See Saunders v. Equifax Info. Servs. LLC*, No. 16-CV-00525-LY, 2017 WL 3940942, at *3 (W.D. Tex. Aug. 3, 2017) (citing *Norman*, 2013 WL 1774625, at *3).

As previously explained, the information reported by Defendants was accurately reported, and there is no competent summary judgment evidence in the record to show that Defendants failed to maintain reasonable procedures to ensure accuracy.  In fact, Defendants present ample evidence to the contrary.  (*See* D. Appx. 7-9, 20, 25, 152-53, 170-71, 176, 183, 283-85, 289, 294, 336, 351-58.)  Therefore, Defendants are also entitled to summary judgment on Dill's § 1681e(b) claim.

Furthermore, Defendants are entitled to summary judgment on Dill's § 1681i claim ("reasonable reinvestigation") because the record evidence demonstrates that Defendants reasonably reinvestigated each of Dill's disputes.  A claim under § 1681(i) requires the plaintiff to prove that: (1) his consumer credit file contained inaccurate information; (2) plaintiff disputed the accuracy of information on his credit file directly with the defendant; (3) the defendant did not reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file; (4) defendant's noncompliance was negligent or willful;

(5) plaintiff suffered injury; and (6) the injury was caused by defendant's failure to reinvestigate. *Potter v. GreenSky, LLC*, No. 5:19-CV-00581-JKP, 2019 WL 5295494, at *2 (W.D. Tex. Oct. 18, 2019). Dill has not attempted to prove any of these elements, while Defendants provide abundant evidence showing that they reasonably reinvestigated Dill's disputes. (*See* D. App 7-12, 13, 63, 139, 285-88, 289.) Summary judgment is therefore warranted on Dill's § 1681i claim.

As to Dill's final claim under the FCRA, failure to block information due to identity theft in violation of § 1681c-2, this claim likewise cannot survive summary judgment. According to 15 U.S.C. § 1681c-2(a), a CRA is required to block information that a consumer identifies "as information that resulted from an alleged identify theft" within four days of receiving "(1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer."

An identity theft report, in turn, refers to a report "(i) that alleges identity theft with as much specificity as the consumer can provide; (ii) that is a copy of an official, valid report filed by the consumer with a Federal, state, or local law enforcement agency[.]; and (iii) that may include additional information or documentation that a[] . . . consumer reporting agency reasonably requests for the purpose of determining the validity of the alleged identity theft[.]" 12 C.F.R. § 1022.3(i)(1)(i)–(iii). Examples of the specificity referenced in 12 C.F.R. § 1022.3(i)(1)(i) includes, in

relevant part, "(i) [s]pecific dates relating to the identity theft such as when the loss or theft of personal information occurred or when the fraud(s) using the personal information occurred," and "[n]ames of information furnisher(s), account numbers, or other relevant account information related to the identity theft." 12 C.F.R. § 1022.3(i)(2).

Because Dill did not submit a sufficiently specific identity theft report and appropriate proof of identity as outlined in 15 U.S.C. § 1681c-2 (*see* D. Appx. 13, 53, 296-98, 303-11, 338-39), Defendants are entitled to summary judgment on his 15 U.S.C. § 1681c-2 claim.

### D.     Dill's remaining claims also fail as a matter of law.

To the extent Dill purports to bring a claim under the FCBA, 15 U.S.C. § 1666b (*see* Compl. ¶ 124), the FCBA only applies to creditors—not CRAs such as Defendants. *See* 15 U.S.C. § 1602(g) (providing that the term creditor "refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement"); *see also Roybal v. Equifax*, 405 F. Supp. 2d 1177, 1180 (E.D. Cal. 2005) ("By its very terms, the FCBA's billing error section applies solely to creditors of open end credit plans."); *McCormick v. D & A*

*Servs.*, No. 3:16-CV-1778, 2018 WL 4335597, at *6 (N.D. Ohio Sept. 11, 2018) ("The plain language of the FCBA indicates this statute applies to creditors.").  Because the FCBA does not apply to Defendants, Dill's claim under this statute cannot survive summary judgment.

Dill also brings a defamation claim against Defendants, alleging that Defendants published false, defamatory statements about him by falsely reporting to third parties that he owed a $300 debt to Verizon.  (*See* Compl. ¶ 127–37.)  Even if these allegations were supported by evidence (which they are not) Dill's defamation claim fails as a matter of law because it is preempted by the FCRA.  It is well-established that "[t]he FCRA preempts state law defamation or negligent reporting claims unless the plaintiff consumer proves 'malice or willful intent to injure' him." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) (citing 15 U.S.C. § 1681h(e)); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 470–471 (5th Cir. 2006), *as modified on reh'g* (Aug. 17, 2006); *Shaunfield v. MB Fin. Bank, N.A.*, No. 3:15-CV-0856-L, 2016 WL 631928, at *4 (N.D. Tex. Feb. 17, 2016).

"Because 'the FCRA does not define malice,' the Fifth Circuit has 'applied the common law-standard," which requires a plaintiff to show that the defendant 'published false statements about [her] knowing the statements were false or with a reckless disregard of whether they were false.'" *Dixon v. Transp. Am.*, No. 3:22-CV-325-L, 2023 WL 11822192, at *6 (N.D. Tex. Feb. 17, 2023) (citations omitted), *adopted*, 2023 WL 11822212 (N.D. Tex. Mar. 7, 2023).  In light of Defendants'

evidence describing the reasonableness of their respective procedures, reinvestigation procedures, and experience with Verizon as a reliable data furnisher (*see* D. Appx. 7-12, 284-89), and the absence of any evidence showing that Defendants acted with malice or willful intent to injure Dill, his state law defamation claim against Defendants is preempted.  Summary judgment is therefore proper on this claim.

For all foregoing reasons, Court should grant Defendants' Joint Motion for Summary Judgment (Dkt. No. 113) in its entirety and dismiss Dill's claims with prejudice.

## IV.  ORDER

It is **ORDERED** that Dill's first motion for sanctions (Dkt. No. 119) is **DENIED**, Dill's second, identical motion for sanctions (Dkt. No. 128) is **DENIED AS MOOT**, and Dill's motion to strike Defendants' summary judgment evidence (Dkt. No. 126) is **DENIED**.

## V.  RECOMMENDATION

The undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Dkt. No. 113) be **GRANTED**, and Dill's Motion to Defer or Deny Defendants Motions for Summary Judgment (Dkt. No. 137) be **DENIED**.

**SO RECOMMENDED** on March 18, 2026.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

-42-

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO OBJECT</u>

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).